IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN LEE WILSON,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>JEFFREY BEARD, Secretary, California Department of Corrections and Rehabilitation,[1]<br><br>　　　　　　　Respondent. | No. 2:12-cv-02545-JKS<br><br>MEMORANDUM DECISION |

Melvin Lee Wilson, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  At the time he filed his Petition, Wilson was in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Pleasant Valley State Prison.  It appears that he has been released on supervised parole, as a search on the California Department of Corrections and Rehabilitation's inmate locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. AE8646) has no record of him. Respondent has answered, and Wilson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On April 22, 2010, Wilson, representing himself, entered a no contest plea to one count of corporal injury to a cohabitant and admitted a prior serious felony conviction.  He later moved to withdraw his no contest plea.  The Court of Appeal described the following facts underlying his plea and subsequent motion to withdraw the plea:

---

[1]　　Because it appears that Wilson has been released but is on post-release supervision, Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for Brazelton, former Warden, Pleasant Valley State Prison.  FED. R. CIV. P. 25(c).

I
*The Plea*

At [Wilson's] request, the trial court held a settlement conference on April 22, 2010. [Wilson] told the court an attorney, Rochelle Forbis, was advising him pro bono.

The deputy district attorney informed the trial court that the People's offer to [Wilson] was to plead no contest to count 7, corporal injury to a cohabitant ([California Penal Code] § 273.5) and admit a strike, with an indicated sentence of six years. [Wilson] replied he was innocent but was willing to take a plea because of his declining health. [Wilson] told the court he would agree to six years, but at 50 percent rather than 80 percent.[FN2] The deputy district attorney replied [Wilson] was facing significantly greater exposure from the remaining charged offenses.

> FN2. Presumably this statement is a reference to the percentage of the prison sentence [Wilson] would have to serve before his release.

[Wilson] told the court anything over five or seven years was an effective death sentence to him in light of his congestive heart failure. The court stated [Wilson's] health went up and down over the course of the case, but he now seemed in good health. Noting [Wilson] found something wrong with every prior offer, the deputy district attorney informed the court this was the People's final offer.

After [Wilson] reiterated his desire for "six with half," the court called a recess. Following the recess, [Wilson] "[r]eluctantly" accepted the offer and entered the no contest plea under *People v. West* (1970) 3 Cal.3d 595 and *North Carolina v. Alford* (1970) 400 U.S. 25 [27 L. Ed. 2d 162]. During the plea colloquy, the court asked [Wilson], "Are you presently under the influence of alcohol or any drug, narcotic, or prescription medication?" [Wilson] answered, "I'm on medication, your Honor, but nothing affecting my ability." The court asked [Wilson] if he was "thinking with a clear head today," to which [he] replied, "Yes, your honor."

II
*Motions to Withdraw Plea*

[Wilson] filed a motion to withdraw the plea (and later a supplement to his motion to withdraw the plea) and motion for appointment of counsel.[FN3] After counsel was appointed, counsel filed a new motion to withdraw the plea. The trial court held a hearing over the course of two days.

> FN3. [Wilson] also filed other motions before appointment of counsel, but these motions are not relevant to the issue . . . .

[Wilson] testified that he did not know there was going to be a settlement conference until he reached the courtroom. He understood the People's offer, six years at 80 percent, but he was adamant that he would not accept the offer. Forbis advised him during the recess that he had six months to withdraw the plea if he did not like it.

According to [Wilson], when he questioned this advice, Forbis replied, "Yes, don't you trust me."

[Wilson] said he was taking numerous medications which can affect his mental state at any time, "from narcotics and other things, and heart pills." [Wilson] also took a tranquilizer and three Nyquils before the settlement conference.

[Wilson] said he suffered a severe angina attack during the recess and took two or three nitroglycerin pills. He felt a little light-headed before he took the pills; [he] did not remember much after taking the nitroglycerin other than it eased his chest pains.

After the plea, defense investigator Larry Ott obtained tapes of interviews with two witnesses, Eric Sakay and Mary Lou Sierra, which would have exculpated [Wilson] from two of the three assault charges. [Wilson] said he would not have entered the plea if he had this information before the settlement conference.

Ott testified that during the preliminary hearing, district attorney's investigator William Proffitt told him about interviews with Sakay and Sierra. Ott asked for copies of the interviews; Proffitt said he would forward the interviews when they were typed up. Although the preliminary hearing was in March, Ott did not get the tapes of the interviews until May, because the prosecution mistakenly thought it had provided the written report of the interviews earlier. Ott listened to the interview tapes and shared their contents with [Wilson].

Ott was in court with [Wilson] at the April 22 settlement conference. He tried to tell [Wilson] it was too early to settle because they did not have the Sakay and Sierra interviews, but he could not get [Wilson's] attention. According to Ott, [Wilson's] demeanor changed after the recess—he was not responsive and appeared to be dazed. Ott overheard Forbis tell [Wilson] he had six months to withdraw the plea if he did not like the sentence.

Proffitt interviewed Sakay and Sierra the day before the preliminary hearing, and told Ott about the interviews during the lunch break on the first day of the preliminary hearing. Proffitt told Ott he would provide the audio recordings and the report as soon as he typed up the report. He briefly recounted the interviews to Ott–Sakay and Sierra said they stored furniture in a house they lived in; [Wilson] did not live there, but occasionally spent the night to get away from his girlfriend. Proffitt told Ott that Sakay and Sierra saw [Wilson] and [his girlfriend] verbally fight many times, but had no memory of a specific fight taking place at their house. [Wilson] was sitting right next to Ott when Proffitt told him about the interviews.

After the lunch break, Ott told Proffitt he drove to the address where Proffitt located Sakay and Sierra, but they were not there. He tried the phone number Proffitt gave him, but the number was disconnected or inoperable. [Wilson] was not present during this conversation.

At some point between the preliminary hearing and the April 22 settlement conference, Proffitt mistakenly told the deputy district attorney that he gave a copy of the written report of the Sakay and Sierra interviews to Ott. Instead, Proffitt gave Ott a report which listed the Sakay and Sierra interviews on its face plate but contained a different interview.

3

Forbis testified that she was not appointed to represent [Wilson] but, at [Wilson's] request, agreed to help with the settlement conference. The People's original offer was eight years, which [Wilson] did not like, preferring four to six years at half time. Forbis then received another offer from the People, six years at 80 percent time, which she communicated to [Wilson] two days before he entered the plea.

[Wilson] was concerned he would be sentenced to eight years rather than six if he accepted the People's offer. Forbis told [Wilson] that if he was sentenced to eight years he would have six months to file a motion to withdraw the plea. Ott was not present during this discussion, which took place in the holding cell.

Forbis thought [Wilson] appeared normal but slightly agitated when he entered the no contest plea. [Wilson] was normally a little volatile and was concerned about how the plea was going. He appeared to be in much better health on the day he entered his plea than on other occasions.

On the day of the plea, [Wilson], Forbis, and Ott discussed the weakness of the People's case regarding Sakay and Sierra. Forbis told [Wilson] he could file a *Romero*[FN4] motion to strike the prior strike and get half-time credit. During discussions on trial strategy, [Wilson] indicated one option would be to have some sort of health issue in court, which would bring proceedings to a standstill if things were not going his way.

FN4. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

The hearing on [Wilson's] motion to withdraw his plea was continued during Proffitt's testimony when [Wilson] was taken to the emergency room for medical treatment after complaining of dizziness and shortness of breath.

The trial court issued a detailed ruling on the motion to withdraw the plea. The trial court found [Wilson] was not credible, noting his testimony that he was surprised by the settlement conference was contradicted by the fact that he requested the settlement conference. [Wilson's] claim that he was unaware of the Sakay and Sierra information was contradicted by evidence that he and Ott knew about the interviews and were given a summary of their contents. [Wilson's] testimony that he did not remember much about the plea was inconsistent with his responses to the court during the colloquy. Most significant to the trial court was [Wilson's] lack of credibility regarding his medical condition. While he was hospitalized several times during the case, [Wilson] told Forbis that one of his strategies was to have health issues in court to bring things to a standstill if matters were not going his way.

The trial court found [Wilson] was articulate and engaged in the discussion during the settlement discussion. He appeared to fully understand the offer and its consequences. [Wilson] was likewise engaged and articulate when he made the plea, and told the court he was thinking clearly.

After carefully observing [Wilson] throughout the proceedings, the court concluded his plea was knowing and voluntary, he was aware of the consequences of the act, and he had plenty of time to consider the offer. While the People failed to provide [Wilson] with the audio recordings and written report of the Sakay and Sierra interviews, the defense investigator was orally advised of the interviews in [Wilson's] presence. In

4

addition, [Wilson] had the exculpatory nature of their testimony and Ott's analysis of the weaknesses in the People's case before he entered the plea.

The court then denied [Wilson's] motion.

Through counsel, Wilson directly appealed his conviction, arguing that the conviction must be reversed because the trial court erred in denying his motion to withdraw his plea. The California Court of Appeal denied his claim in a reasoned opinion. Wilson, again through counsel, then petitioned to the California Supreme Court for review of the denial. The supreme court summarily denied the petition on November 16, 2011.

Wilson timely filed a petition for a writ of habeas corpus to this Court on September 18, 2012.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Wilson argues, as he did on direct appeal, that the trial court erred in denying his motion to withdraw his no contest plea.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

5

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A guilty plea must be knowing, intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

In challenging the voluntariness of his plea in his Petition before this Court, Wilson refers the Court to his appellate briefs before the state courts.[2]  On direct appeal before the state courts, Wilson raised three main arguments in support of his motion to withdraw his plea.

First, Wilson contended that his poor health and the medications he was taking impaired his judgment to the extent that it rendered his plea involuntary.  The appellate court rejected this argument, concluding:

> [Wilson's] argument focuses on his allegedly impaired judgment when he entered the plea.  However, the trial court found the primary evidence submitted in support of this contention—[Wilson's] testimony—was not credible.  [Wilson] attempts to overcome this finding by noting he was taking many medications, and Ott testified that [Wilson] was not responsive and dazed after the recess.  This evidence does not show the trial court's ruling lacks sufficient evidence.  Forbis's testimony, the plea colloquy where [Wilson] said he was thinking clearly, and the court's own observations of [Wilson] during the plea constitute substantial evidence supporting the court's ruling.

The record in this case indicates that, prior to entering the plea, the trial court asked Wilson if he was under the influence of alcohol or any drug, narcotic or prescription medication.  Wilson replied, "I'm on medication, Your Honor, but nothing affecting my ability."  Wilson further confirmed that he was thinking with a clear head.

"Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962)).  As

---

[2]  Despite Wilson's citation in the plea agreement to *People v. West*, 477 P.2d 409 (Cal. 1970), whether the state trial court must find a factual basis for Wilson's no contest plea is not at issue here because Wilson does not challenge the sufficiency of the factual basis of his plea.  Moreover, the record indicates that, at his change of plea hearing, Wilson agreed that the court could take the factual basis for the plea from the preliminary hearing transcript.

7

the Court of Appeal recognized, Wilson failed to present on direct appeal evidence of impairment that would overcome the presumption of verity given his earlier statement and thus fails to present such evidence before this Court. Notwithstanding the fact that Wilson did have medical impairments that required medication at the time of the plea, Wilson has not demonstrated that these circumstances so impaired his understanding or free will that his declarations should no longer be accepted. While the documentation he provided on direct appeal appear consistent with the complaints he made during the hearing for his withdrawal motion, they do not suggest that Wilson's medical condition was so serious as to satisfy the imposing evidentiary standard required for collateral attack on his plea. *Blackledge*, 431 U.S. at 74; *cf. Fontaine v. United States*, 411 U.S. 213, 214 (1973) (granting evidentiary hearing to develop habeas petitioner's claim that uncounseled guilty plea was involuntary where record showed multiple hospitalizations for physical abuse, gunshot wounds, heroin addiction and "other severe illnesses"). Furthermore, the trial court reasonably rejected Wilson's alleged impairment as a basis to withdraw the plea based on its recollection that Wilson appeared healthy, engaged, and articulate during the hearing.

Wilson also suggested on appeal that withdrawal of his plea was warranted based on incorrect evidence he was given by Forbis. The Court of Appeal likewise rejected this claim:

> [Wilson] argues in passing that Forbis gave [Wilson] bad legal advice by telling him he could withdraw the plea within six months if he did not like the result. His argument is based on Ott's testimony, which is contradicted by Forbis's testimony that she told [Wilson] he had six months to file a motion to withdraw the plea if the trial court gave [Wilson] a greater sentence than the indicated six-year term. The trial court found Forbis's testimony more credible, and we will not substitute our judgment for the court's finding on appeal.

This Court does not re-weigh the evidence or reassess witness credibility. *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Wilson's argument therefore likewise fails on habeas review.

Finally, Wilson argued that the prosecution's failure to disclose exculpatory information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), rendered his plea unknowing. Wilson also indicates in his Petition that "[his] main appellate issue is that the prosecutor did not provide copies of tapes of two witnesses exculpatory to defense until after [the] plea bargain." He further states that, during the hearing on his plea withdrawal motion, he and his investigator testified that the defense "was not given exculpatory evidence until after a plea bargain was reached." The appellate court also rejected Wilson's *Brady* argument on direct appeal:

> The count to which [Wilson] pled no contest, count 7, addressed the April 14, 2009, assault, while the Sakay and Sierra interviews were relevant only to the incident on May 9, 2009. Assuming that withholding material on another count can invalidate a no contest plea, the failure to provide the tapes and written summaries of the Sakay and Sierra interviews did not establish good cause to withdraw the plea. The trial court found [Wilson] was informed of the interviews and their contents before he entered his plea. [Wilson] was aware of the weaknesses in the case against him. Based on the evidence, the trial court did not abuse its discretion when it denied [Wilson's] motion to withdraw the plea.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material only if there is a "'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995) (per curiam); *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the

9

outcome. *See Bagley*, 473 U.S. at 682. When the defendant enters a guilty plea rather than proceeding to trial, materiality is determined by "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995).

In this case, any concerns regarding the potential materiality of the Brady material are absent because the record indicates that Wilson and his investigator were fully aware of the *Brady* evidence at the time Wilson entered into the no contest plea. The trial court found that Ott interviewed Sierra before April 7, 2010, roughly two weeks before Wilson entered his no contest plea on April 22, 2010. Sierra informed Ott that, on the dates in question, Wilson and the victim were not at the residence where the abuse allegedly occurred. Ott prepared written notes of the interview and provided an oral report to Wilson. Ott also prepared a document detailing the weaknesses in the prosecution's case against Wilson, which included a brief synopsis of his interview with Sierra. The document was provided to Wilson before April 22, 2010, and Forbis also discussed the document with Wilson prior to April 22, 2010.

The trial court further found that Profitt, the district attorney's investigator, interviewed both Sierra and Sakay on March 11, 2010. The following day, Proffit informed Ott that, while Sierra and Sakay had witnessed Wilson and the victim fighting many times, they did not see them fight at the residence in question. Wilson was seated next to Ott when Proffit delivered the brief oral synopsis of the interview. Wilson therefore was aware of the *Brady* material at the time he pled no contest, and as such, his plea was informed and voluntary as to such information. *See Sanchez*, 50 F.3d at 1453.

The record further indicates that Wilson and Ott were informed that a copy of the evidence could be obtained from the prosecution and that neither Wilson nor Ott followed up with the prosecutor from March 12, 2010, when Wilson and Ott were informed of the interview and its contents, until the withdrawal motion hearing on April 22, 2010, to obtain a correct copy of the interview.  *See United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("Since suppression by the Government is a necessary element of a *Brady* claim, if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails." (citation omitted)).  A review of the record therefore indicates that the state courts reasonably rejected Wilson's contention that the prosecution's failure to provide the evidence at issue rendered his plea involuntary, and Wilson is not entitled to habeas relief on that argument either.  Accordingly, Wilson has failed to demonstrate that, but for the failure to disclose the *Brady* material, he would have refused to plead and would have gone to trial.  Wilson is therefore not entitled to habeas relief on any argument advanced in his claim.

## V. CONCLUSION AND ORDER

Wilson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

    Dated: March 28, 2014.

                                                    /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge